UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Aisha Agyin, <br><br> *Plaintiff,* <br><br> v. <br><br> Shahram Razmzan, M.D., St. John's Riverside Hospital, Yonkers – Park Care Health Center an entity of Hudson River Healthcare, Inc. d/b/a HRHCare Hudson River Healthcare, Inc. d/b/a HRHCare, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 2:17-cv- |

**NOTICE OF REMOVAL**

Pursuant to 42 U.S.C. § 233(*l*)(2), 28 U.S.C. § 2679(d)(3), and on the grounds set forth below, defendant Shahram Razmzan, MD, respectfully removes to this Court the civil action of *Aisha Agyin v. Shahram Razmzan, M.D., St. John's Riverside Hospital, Yonkers – Park Care Health Center an entity of Hudson River Healthcare, Inc. d/b/a HRHCare Hudson River Healthcare, Inc. d/b/a HRHCare,* Index No. 52348/2016, which commenced on February 25, 2016 in the Supreme Court of the State of New York.[1]

Jurisdiction

1. Because plaintiff's civil action was commenced in state court against Shahram Razmzan, M.D., ("Dr. Razmzan") a deemed employee of the Public Health Service, this action is properly removed under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233, a federal officer removal statute that serves a similar purpose as 28 U.S.C. §

---

[1] Unlike removals under 28 U.S.C. § 1446, a deemed employee removing a case pursuant to 42 U.S.C. § 233(*l*)(2) is not required under the statute to provide a copy of all process, pleadings, and orders filed in the state court proceedings. However, defendant Dr. Razmzan has attached the state court pleadings to his removal petition for the convenience of the Court. *See* Exhibits C – E.

1

1442(a)(1). The Court has jurisdiction pursuant to the FSHCAA, the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2679(d)(3), and 28 U.S.C. § 1331, to assess whether the state action arose out of acts or omissions within the scope of Dr. Razmzan's deemed PHS employment and, in turn, whether the United States must be substituted as the only proper defendant. *See Estate of Booker v. Greater Philadelphia Health Action, Inc.*, 10 F.Supp.3d 656 (E.D. Penn. 2014).

Parties

2. Defendant Dr. Shahram Razmzan is, and at all times relevant to this action was, a physician licensed by the State of New York to practice obstetrics and gynecology and a part-time employee of Hudson River Healthcare, Inc. doing business as HRHCare, Hudson River Healthcare, Inc. ("HRHCare"). HRHCare is a federally-qualified community health center receiving federal grant funds under Section 330 of the Public Health Service (PHS) Act (which is codified at 42 U.S.C. § 254b). As an employee of HRHCare, Dr. Razmzan is deemed to be a federal PHS employee and immune from civil actions arising out of the performance of his medical, surgical, or related functions within the scope of his employment with HRHCare. 42 U.S.C. §§ 233(a) and (g). In about June 2016, and separate from his employment at HRHCare, Dr. Razmzan began practicing obstetrics and gynecology as a part-time physician for WestMed Medical Group.

3. Plaintiff Aisha Agyin is a patient of HRHCare and resident of Yonkers, New York.

GROUNDS FOR REMOVAL

Statutory Framework

4. Pursuant to the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, PHS personnel are absolutely

immune for damages actions arising out of their performance of medical, dental, surgical, and related functions within the scope of their federal employment. 42 U.S.C. § 233(a). Section 233(a) extends absolute immunity to PHS personnel by making the remedy against the United States under the FTCA the *exclusive* remedy for such actions. *Id.*

5. The legislative objective of 42 U.S.C. § 233(a) is to facilitate the provision of medical services in underserved areas by shielding PHS personnel from personal liability arising out of their medical and related duties. Without such protection, the cost of professional liability insurance greatly hinders or even extinguishes the provision of these services. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

6. The Federally Supported Health Centers Assistance Act (the "FSHCAA"), 42 U.S.C. § 233(g) *et seq.*, authorizes the Secretary of the U.S. Department of Health and Human Services (HHS) to extend to federally-funded health centers and their officers, directors, and employees (and certain contractors) the same protection that § 233(a) affords to actual PHS employees under the FTCA. That protection is a grant of "*absolute immunity* . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (emphasis added).

7. In order to be deemed a PHS employee, for purposes of Section 233(a) immunity, the FSHCAA requires a federally funded health center to submit an application with detailed information and supporting documentation sufficient for HHS to verify that the coverage would

3

apply to all services provided by the health center and its providers to patients (and in limited circumstances, non-patients) of the center and that the center meets four requirements listed in § 233 (h). 42 U.S.C. § 233(g)(1)(D) and (h).

8. The Secretary is required to make a deeming determination for health centers and their personnel within 30 days of receipt of a deeming application. *Id.* at 233(g)(1)(E). A favorable deeming determination by the Secretary (which confers immunity) is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and any party to any civil action or proceeding, 42 U.S.C. § 233(g)(1)(F), but a negative determination (one denying a deeming application under 233(g) and (h)) is not final and binding. *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005) (recognizing statute's "final and binding" clause does not apply to a negative deeming determination).

9. In the event of a negative deeming determination, the FSHCAA contemplates that the applicant would have a reasonable opportunity to pursue one or more of the following options: seek reconsideration of the Secretary's decision; submit a new application addressing the Secretary's stated basis for the prior denial; challenge the Secretary's decision under the APA; or, procure private malpractice insurance. *El Rio Santa Cruz*, 396 F.3d at 1272.

10. By requiring a prompt and advance deeming determination, making a favorable determination final and binding with respect to a specified prospective period, and conferring absolute immunity from any and all forms of civil malpractice suits for that period, the FSHCAA is designed to eliminate a federally-funded health center's need to purchase private malpractice liability insurance for actions arising out of the performance of medical or related functions within the scope of their employment and in so doing allows centers to devote their federal grant

funds to patient services (rather than insurance premiums). *See* H.R. Rep. 102-823, pt. 1, at 3 (1992).

11. When a plaintiff files suit against a deemed health center and/or any of its employees in state court, the Attorney General has a mandatory duty to appear in that court within 15 days of notice of the lawsuit to report that the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* at § 233(*l*)(1). The report to the state or local court of that favorable deeming determination is also "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id.* at § 233(*l*)(1).

12. If, despite that mandatory duty, the Attorney General fails to appear in the state court action or proceeding within 15 days of notice of the state action, the deemed entity or individual has an absolute right as a deemed federal employee to remove the matter to the appropriate federal district court, without any time limit for doing so. *Id.* at § 233(*l*)(2). Section 233(*l*)(2) is in substantive and effect an officer removal statute. Upon removal, the state court proceeding is stayed, by operation of law, until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. *Id.*

13. The hearing in federal district court following § 233(*l*)(2) removal is designed to confirm (that which the Attorney General failed to report) that HHS "determined under

5

subsections (g) and (h) of [§ 233], that such entity [or] employee ... is deemed to be an employee of the [PHS] for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding," *id.* at § 233(*l*)(1), and to ensure that the United States is substituted as the defendant. *El Rio Santa Cruz Neighborhood Heath Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005); *see also Booker v. Greater Philadelphia Health Action, Inc.*, 10 F.Supp.3d 656 (E.D. Penn. 2014).

Factual and Legal Grounds for Removal

14. HRHCare submitted deeming applications for itself and its personnel (including Dr. Razmzan) with respect to each year and all times relevant to this action. The Secretary of HHS, under 42 U.S.C. § 233(g) and (h), approved those applications and deemed HRHCare and its employees (including Dr. Razmzan) for purposes of the protections afforded under § 233(a). *See* Exhibit A (favorable deeming determinations for the years 2012 through 2017) and Exhibit B (employment contract).

15. On February 25, 2016, plaintiff filed a medical malpractice claim against Dr. Razmzan, St. John's Riverside Hospital, and HRHCare in the Supreme Court of the State of New York, County of Westchester. Exhibit C (summons and complaint).

16. On its face, plaintiff's complaint alleges medical malpractice. The central allegation is that on or about July 2014 through October 7, 2014, defendants negligently provided her with medical care during the pregnancy, labor, and delivery of her twins, which resulted in a stillbirth.

17. On March 3, 2016, HRHCare's Director of Credentialing, Arlene Bell, notified Meredith Torres, a senior torts attorney for the Office of General Counsel at HHS of the state court summons and complaint against HRHCare and Dr. Razmzan.

18. Upon information and belief, plaintiff filed an administrative claim with HHS under the Federal Tort Claims Act on March 11, 2016.

19. According to a Stipulation of Discontinuance executed on August 22, 2016, HRHCare was dismissed without prejudice from the case filed in state court case. Exhibit E.

20. On May 23, 2016, Dr. Razmzan filed an answer to plaintiff's complaint in state court and raised the affirmative defense of immunity under the FSHCAA. Exhibit D.

21. In a letter dated October 5, 2016, William A. Biglow, the Deputy Associate General Counsel for the Claims and Employment Law Branch at HHS denied coverage of the claim against Dr. Razman, stating that "Dr. Razmzan cannot be deemed as an employee of the Public Health Service because Dr. Razmzan billed for medical services rendered to Plaintiff, Aisha Agyin at the Hospital and he received compensation from another source other than the Health Center."

22. Under the FTCA, an "employee of the Government" is defined as "employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, *whether with or without compensation.*" 28 U.S.C. § 2671. Questions as to whether a deemed employee was acting within his or her scope of employment are governed by state law or "law of the place." 28 U.S.C. § 1346(b)(1); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

23. Likewise, the immunity provided to deemed PHS employees under § 233(a) is not waived if the employee receives payment from a source other than the health center, so long as the underlying acts or omissions giving rise to the damages action occurred during the individual's deemed scope of employment. The scope of one's employment is not determined simply by virtue of the source or sources of one's compensation. Nor does the FSHCAA or §

7

233(a) grant the Secretary authority to deny immunity merely because of the deemed employee received additional compensation from a source other than the health center itself.

24. Mr. Biglow's response denying Ms. Bell's request for representation for Dr. Razmzan is contrary to the FSHCAA's plain language that makes prospective deeming determinations "final and binding" on HHS. Once the Secretary deems an entity and its employees to be an employee of the PHS, that deeming "determination shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." 42 U.S.C. § 233(g)(1)(F).

25. Mr. Biglow's denial of the request for representation on behalf of Dr. Razmzan is also contrary to the Secretary's regulations, which also do not limit § 233(a) immunity based on the source of the individual's compensation.

26. Mr. Biglow's denial letter invokes agency guidance as if it had the binding force and effect of law, which it does not, as it is contrary to the operative statute and, in any event, was not promulgated by the Secretary of HHS through notice and comment rule-making in accordance with the PHS Act, FSHCAA, and Administrative Procedures Act.

27. Mr. Biglow's reliance on guidance is contrary to the plain language of the FSHCAA, because the FSHCAA does not grant the Secretary (or those under the Secretary) the authority to define scope of employment; rather, it is well-established that scope of employment under the FTCA is defined by state law (*i.e.*, the law of the place).

28. Dr. Razmzan is a board-certified obstetrician-gynecologist, licensed to practice in New York with over 30 years of experience in the field, including administrative experience. He works as a physician at HRHCare, a deemed entity under the FSHCAA and serves as the medical

8

director of the Ob-Gyn program at HRHCare's Park Care site in Yonkers, NY. That site is specifically designated as one of HRHCare's service locations in its notice of grant award.

29. HRHCare hired Dr. Razmzan, in his individual capacity, to provide Ob-Gyn services to patients of HRHCare. Under his employment contract with HRHCare, Dr. Razmzan's responsibilities included, among other things, "the care of HRHCare's hospitalized and outpatient Ob-Gyn patients." Exhibit B (employment contract).

30. Recognizing that it could not afford to pay Dr. Razmzan, given his level and years of experience, on a salaried basis for his outpatient *and* inpatient services to HRHCare patients, HRHCare designed an employment agreement that would compensate him directly through a salary with respect to his outpatient services to HRHCare patients and indirectly by allowing him to bill and collect payment for the inpatient services he rendered to HRHCare patients (which would otherwise be billed by and paid to HRHCare) at the hospital.

31. This arrangement was designed to benefit HRHCare by shifting the risk of not having a sufficient volume of inpatient services to support the fixed salary that HRHCare would have had to pay to secure Dr. Razmzan's inpatient services for its patients. Because HRHCare could not accurately predict whether a fixed salary for the full range of services to its patients would appropriately compensate Dr. Razmzan for inpatient care services, it was in HRHCare's interest and benefit to assign Dr. Razmzan the right to revenue for inpatient services rather than having to pay a fixed salary with the risk that it would either overpay or underpay Dr. Razmzan for inpatient services. By designing an agreement that effectively assigned the revenue HRHCare would have otherwise received to Dr. Razmzan for inpatient services to its patients, HRHCare benefited by securing a highly experienced OBGYN to serve its patients without

9

having to commit itself to a fixed salary that would adequately compensate Dr. Razmzan for an unknown volume of deliveries for its patients.

32. In other words, Dr. Razmzan's employment agreement with HRHCare to conduct inpatient deliveries at St. John's Riverside Hospital allowed HRHCare to facilitate deliveries to its patients by a highly experienced physician, and was a win-win employment and compensation arrangement done for the benefit of HRHCare and its patients.

33. Throughout her pregnancy, plaintiff received prenatal care from HRHCare physicians. She met with Dr. Razmzan at one of HRHCare's sites for a prenatal visit when she was 37 weeks pregnant, as the HRHCare physician who she regularly saw was unavailable.

34. Given the high-risk nature of plaintiff's pregnancy and consistent with Dr. Razmzan's responsibilities as a HRHCare employee, he recommended and scheduled the delivery of the twins for the next day at St. John's Riverside Hospital. He met plaintiff at the hospital and performed the delivery on following day. Plaintiff was discharged from the hospital to Dr. Razmzan at HRHCare's Yonkers-Park Care site. Pursuant to the discharge order, Dr. Razmzan met with plaintiff at HRHCare's site on at least two separate occasions.

35. Apart from his HRHCare salary, Dr. Razmzan did not bill privately or receive monetary compensation for the outpatient services he provided to plaintiff, who was an established HRHCare patient. In accordance with his HRHCare employment agreement, which was designed to benefit the health center, Dr. Razmzan directly billed and received payment for the inpatient, delivery services he rendered to plaintiff. When billing for such services provided to HRHCare patients at a hospital, Dr. Razmzan used a billing account he set up specifically to bill for services provided to HRHCare patients in a hospital setting (i.e., inpatient services). At the time of the services he rendered to plaintiff, Dr. Razmzan was not employed by employer

other than HRHCare. In about June 2016, in addition to his HRHCare employment, he started to work part-time for a private practice, WestMed Medical Group. When billing for inpatient services to patients of WestMed, Dr. Razmzan has used WestMed's billing number and account, which is separate and distinct from the billing account that he previously established to bill for inpatient services to HRHCare patients.

36. In her complaint, plaintiff argues that on or about July 2014 through October 7, 2014, Dr. Razmzan negligently provided her with medical care during her pregnancy, labor, and delivery of her twins, which resulted in a stillbirth.

37. At all times relevant in this action, Dr. Razmzan was an employee of HRHCare and deemed to be a PHS employee pursuant to the FSHCAA. The medical and surgical services he performed before, during, and after delivery were not only within the scope of his deemed employment but rendered to an established patient of HRHCare.

38. Pursuant to Dr. Razmzan's employment contract with HRHCare, he was required to perform medical and surgical services necessary to HRHCare patients. He did not choose to see plaintiff as a patient of HRHCare in the hospital, but was obligated to do so as a result of his employment contract with HRHCare.

39. As a deemed employee, Dr. Razmzan is absolutely immune from plaintiffs' medical malpractice claim. *See Hui*, 559 U.S. at 806 (stating that protection under the FSHCAA is a grant of "*absolute immunity* . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.") (emphasis added).

40. Because plaintiff's claims against Dr. Razmzan arise out of the performance of medical, surgical, or related functions within the scope of his employment, he is immune and

plaintiff's exclusive remedy for such a claim is against the United States under the FTCA. 28 U.S.C. § 1346(b)(1) (United States "district courts […] have exclusive jurisdiction of civil actions on claims against the United States").

41. When a plaintiff files suit against a deemed health center and/or any of its employee providers in state court, the deemed defendant health center and its employees named in the action must deliver "all process served upon him or an attested true copy thereof to his immediate superior or to whoever was designated by the Secretary to receive such papers." 42 U.S.C. § 233(b). In the case of deemed health centers and their employees, the immediate superior or person designated by the Secretary are personnel at the Health Resources & Services Administration (HRSA) of HHS. Per HRSA policy, a deemed health center and its employees must submit any state court complaints by fax or email to the Claims and Employment Law Branch of the General Law Division in HHS's Office of the General Counsel.[2]

42. The immediate superior or person designated by the Secretary must "promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary." 42 U.S.C. § 233(b).

43. The Attorney General has a nondiscretionary duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* at § 233(*l*)(1). The report to the state or local court of a favorable

---

[2] HRSA, *Claims Filing: Health Centers*, bphc.hrsa.gov/ftca/claimsfiling/healthcenterclaims.html (last accessed May 2, 2017).

deeming determination is also "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id.* at § 233(*l*)(1).

44. If the Attorney General fails to appear in the state court action or proceeding within 15 days of notice of the state action, the deemed entity or individual may remove the matter to the appropriate federal district court any time before a trial on the merits. *Id.* at § 233(c), and (*l*)(2). The state court proceeding is then stayed, by operation of law, until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. *Id.*

45. In this case, Dr. Razmzan and HRHCare notified HHS of plaintiff's complaint by adhering to HRSA's policy and submitting a request for federal government representation on behalf of Dr. Razmzan. After receiving that notice for HRHCare and Dr. Razmzan, HHS was required to notify the Attorney General. Here, the Attorney General failed to appear in the state court action, as required under 42 U.S.C. § 233(*l*)(1).

46. Pursuant to Section 233(*l*)(2), the district court must conduct a hearing to confirm (that which the Attorney General failed to report) that HHS "determined under subsections (g) and (h) of [§ 233], that such entity [or] employee ... is deemed to be an employee of the [PHS] for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding," *id.* at § 233(*l*)(1), and to ensure that the United States is substituted as the defendant. *El Rio Santa Cruz Neighborhood Heath Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005); *see also Booker v. Greater Philadelphia Health Action, Inc.*, 10 F.Supp.3d 656 (E.D. Penn. 2014).

Conclusion

47. Pursuant to 42 U.S.C. § 233(*l*)(2), 28 U.S.C. § 2679(d)(3), and 28 U.S.C. § 1442(a)(1), Dr. Razmzan is authorized to, and hereby does, remove to this Court the civil action of *Aisha Agyin v. Shahram Razmzan, M.D., et al.*, Index No. 52348/2016.

Dated: June 21, 2017

Respectfully submitted,

Fumuso, Kelly, Swart, Farrell, Polin & Christensen LLP

_____
Anthony M. Maffia
110 Marcus Blvd. Suite 500
Hauppauge, NY 11788
Telephone: (631) 232-0200
Facsimile: (631) 232-1305

*Attorney for Defendants*
*Shahram Razmzan amd Yonkers-Park Care*
*Health Center and entity of Hudson River*
*Healthcare, Inc. d/b/a HRHCare*

Feldesman Tucker Leifer Fidell LLP
Matthew S. Freedus*
Jonay F. Holkins*
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel.:   (202) 466-8960
Fax:   (202) 293-8103
mfreedus@ftlf.com
jholkins@ftlf.com

*Attorneys for Defendant*
*Shahram Razmzan, MD*

*A motion for *pro hac* admission will be filed promptly to represent Shahram Razmzan

Law Offices of Joseph M. Lichtenstein, P.C.
131 Mineola Boulevard, Suite 102
Mineola, New York 11501
(516) 873-6300
*Attorney for Plaintiff*

14

Vincent L. Gallo
St. John's Riverside Hospital
Office & P.O. Address
99 Park Avenue
New York, New York 10016
(212) 286-8585
*Attorney for Defendant St. John's Riverside Hospital*